UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


EMILY B. ROSEWALL,

      Plaintiff,

v.                                                                    Case No. 1:20-cv-775
                                                                      Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant,

_____/

## OPINION

      Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied her application for disability insurance benefits (DIB) and supplemental security income (SSI).

      On December 2, 2016, plaintiff protectively filed an application for SSI. PageID.51. On February 20, 2019, while this claim was pending, plaintiff filed an application for DIB. *Id*. In both claims, plaintiff alleged a disability onset date of April 1, 2009. *Id*. The claims were consolidated for decision. *Id*. This consolidated claim appears to be plaintiff's third application for benefits, with previous applications being denied in administrative law judge (ALJ) decisions dated August 2, 2011, and November 5, 2015. *Id*. The relevant time period for plaintiff's consolidated claim commences on November 6, 2015 (the first day of the unadjudicated period). *Id*.

      In the present application, plaintiff identified her disabling conditions as obsessive-compulsive disorder (OCD), depression, wrist problems, chronic migraines, and fibromyalgia.

1

PageID.445.  Prior to applying for benefits, plaintiff completed three years of college.  PageID.434, 446.  The ALJ reviewed plaintiff's application de novo and entered a written decision denying benefits on July 26, 2019.  PageID.51-62.  This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I.      LEGAL STANDARD

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations."  *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016).  This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).  "[T]he threshold for such evidentiary sufficiency is not high."  *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019).  "Substantial evidence, this Court has said, is more than a mere scintilla. It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole.  *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990). The scope of this review is limited to an examination of the record only.  This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence.  *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).  "If the

[Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a

significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.      ALJ's DECISION

Plaintiff's applications failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff engaged in substantial gainful activity in the third quarter of 2018 and met the insured status requirements of the Social Security Act through December 31, 2019. PageID.53.[1] At the second step, the ALJ found that plaintiff had the following severe impairments: migraine headache disorder; major depressive disorder; generalized anxiety disorder; borderline personality disorder; and posttraumatic stress disorder (PTSD). PageID.54. At the third step, the ALJ found that through the date last insured, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.55.

The ALJ decided at the fourth step that:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but is limited to simple, routine, repetitive, unskilled work, with a specific vocational preparation of 1 or 2 as defined in the Dictionary of Occupational Titles. The work should be in a non-production pace work setting (*e.g.*, there should be no assembly line work). The claimant can perform work that does not require interaction with the public and that does not involve working in

---

[1] The ALJ clarified that, "there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity" stating:

"After the alleged onset date of disability, the claimant also performed work that did not rise to the level of substantial gainful activity. The claimant's earnings were $1,440 in the second quarter of 2016; $1,320 in the fourth quarter of 2016; $1,620 in the first quarter of 2017; $1,500 in the second quarter of 2017; $1,740 in the fourth quarter of 2017; $1,980 in the first quarter of 2018; $3,101 in the second quarter of 2018; $1,560 in the fourth quarter of 2018; and $1,560 in the first quarter of 2019 (Exhibits C4D and C7D). The average of the claimant's monthly earnings did not exceed $1,130, $1,170, $1,180, or $1,220 per month for calendar years 2016, 2017, 2018, and 2019, respectively (20 CFR 404.1574)." PageID.54.

tandem with co-workers. Supervision should be of the kind that is typical for simple, routine, unskilled work.

PageID.57.  The ALJ also found that plaintiff has no past relevant work.  PageID.60.

At the fifth step, the ALJ found that plaintiff could perform a significant number of unskilled jobs at all exertional levels.  PageID.61.  Specifically, the ALJ found that plaintiff could perform the requirements of occupations in the national economy such as: night cleaner (light exertional work, 220,000 jobs); office helper (light exertional work, 114,000 jobs); mail clerk (light exertional work, 40,000 jobs); document preparer (sedentary exertional work, 62,000 jobs); and, inspector (sedentary exertional work, 10,000 jobs).  PageID.61.  Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from November 16, 2015 (the first day of the unadjudicated period) through July 26, 2019 (the date of the decision).  PageID.61-62.

## III.    DISCUSSION

Plaintiff has raised four errors on appeal.

### A.    The ALJ committed reversible error by not properly weighing the medical evidence, especially the opinions of plaintiff's treating physicians.

Because plaintiff filed her SSI claim before March 27, 2017, and the DIB and SSI claim were later consolidated for decision, the "treating physician rule" applies to the ALJ's decision.  *See* 20 C.F.R. §§ 404.1527 and 416.927.   Under this rule, a treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997).  Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given

5

controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record.  *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

Plaintiff relies on the opinion of Christina Seicarescu, M.D., who testified that plaintiff fits the requirements of Listing 12.04 (Depressive, bipolar, and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders).  *See* Dr. Seicarescu's Sworn Statement (PageID.2469-2483).  In this regard, the doctor testified that plaintiff is "dysregulated" in the sessions.  PageID.2476.  The doctor explained this conduct as, to "behave inappropriate to the situation, like yelling, screaming, crying, storming out of the session, interrupting a conversation" and that this behavior "is personally inappropriate."  *Id*.  In explaining plaintiff's dysregulated behavior to a layperson, the doctor stated that these are the types of things that if "you did them at work  .  .  .  [y]ou would get fired." *Id*.

The ALJ addressed Dr. Seicarescu's opinion as follows:

The claimant's psychiatrist, Dr. Seicarescu, provided a sworn statement on February 8, 2019, in which she opined that the claimant's mental impairments meet the criteria of listings 12.04 and 12.06 due to marked to extreme functional limitations. Dr. Seicarescu also opined that the claimant would not show up to work on a regular basis (Exhibit C10F). This opinion is given limited weight, because "marked" and "extreme" limitations are not supported by the treatment history, the mental status examination findings reported by Dr. Seicarescu's in the treatment notes, or by clinical findings reported by other sources (*see* Exhibit C9F).

PageID.59-60.

The ALJ failed to articulate good reasons for not crediting Dr. Seicarescu's opinion. *See Wilson*, 378 F.3d at 545; 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2).  The ALJ did not address the medical evidence in a meaningful manner to explain why the evidence did not support the doctor's opinion.   Rather, she simply cited the doctor's sworn statement and an exhibit containing over two hundred pages of medical records. *See* Exhibit C9F (medical records) (PageID.2250-2329, 2331-2416, 2418-2468) and C10F (sworn statement) (PageID.2469-2483).[2] An ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995).   "It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence.  It is absolutely essential for meaningful appellate review." *Hurst v. Secretary of Health and Human Services*, 753 F.2d 517, 519 (6th Cir. 1985).  Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the Commissioner should re-evaluate Dr. Seicarescu's opinion.

**B.      The ALJ committed reversible error by failing to give this case the fresh look required by law.**

Plaintiff contends that the ALJ failed to provide her with a "fresh look" with respect to her present application for disability as required by *Earley v. Commissioner of Social Security*, 893 F.3d 929 (6th Cir. 2018). "When an individual seeks disability benefits for a distinct period of time, each application is entitled to review."  *Earley*, 893 F.3d at 933.  In performing this new review, the court cautioned that,

> Fresh review is not blind review. A later administrative law judge may consider what an earlier judge did if for no other reason than to strive for consistent decision making.

---

[2] The Court notes that while the ALJ summarized Dr. Seicarescu's medical records, PageID.58-59, she did not explain how these records failed to support the doctor's "marked" and "extreme" limitations with respect to Listings 12.04 and 12.06 or how plaintiff's dysregulated behavior would affect her ability to work.

*Id*. at 934.

Here, the ALJ addressed the res judicata effect of the previous ALJ decisions as follows,

As noted above, the claimant filed a prior Title XVI application that was the subject of an unfavorable administrative law judge decision dated November 5, 2015. The decision was affirmed by the United States District Court for the Western District of Michigan on April 25, 2017.  The November 5, 2015 decision is administratively final. Where a final decision after a hearing on a prior disability claim contains a finding of a claimant's residual functional capacity, or other finding required under the applicable sequential evaluation process for determining disability, adjudicators must adopt such a finding from the final decision on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding (Social Security Acquiescence Ruling 98-4(6)). In this case, the medical criteria and Listing of Impairments for mental and neurological disorders have been revised since the prior decision was issued (20 CFR Part 404, Subpart P, Appendix 1). Accordingly, Acquiescence Ruling 98-4(6) does not preclude different findings.

PageID.57.

Plaintiff's conclusory argument does not address the reasoning in *Earley* in any detail.  *See* Plaintiff's Brief (ECF No. 20, PageID.2622).   Here, the ALJ's decision reflects an independent and fresh review of plaintiff's claims for the relevant time period, noting that the medical criteria and listings for mental and neurological disorders have been revised since the prior decision was issued.  Accordingly, this claim of error is denied.

> **C.     The ALJ did not have substantial evidence to support her finding that plaintiff had a residual functional capacity (RFC) with no physical limitations.**

Plaintiff contends that the ALJ erred by failing to find that she had physical restrictions as to lifting and use of her hands, relying on the opinion of Mark R. DeHaan, M.D. Plaintiff's Brief at PageID.2622-2623.   Plaintiff reported bilateral hand locking, clicking, and tingling in June 2018.  PageID.2231.  On examination in December 2018, plaintiff reported that

the symptoms are improving. *Id*. The doctor diagnosed plaintiff with Raynaud's disease without gangrene (bilateral). *Id*. On physical examination of plaintiff's hands, the doctor found that she had digital range of motion within normal limits. *Id*. The ALJ reviewed the records and determined that this was a non-severe impairment. PageID.54. The ALJ's RFC determination, which limited plaintiff to mental limitations, is supported by substantial evidence. Accordingly, this claim of error is denied.

### D. The ALJ committed reversible error by using improper boilerplate language to support her findings.

Plaintiff's objection appears based in part on the ALJ's use of the following "boilerplate":

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision (PageID.58).

Plaintiff's Brief at PageID.2623. Plaintiff cites *Browning v. Colvin*, 766 F.3d 702, 708 (7th Cir. 2014) for the proposition that the implication in this "pernicious" boilerplate "is that the assessment of the claimant's ability to work preceded and may invalidate the claimant's testimony about his or her ability to work. Actually that testimony is properly an input into a determination of ability to work." *Id*. However, plaintiff has not developed an argument that this sentence creates a structural defect so significant that it requires the reversal of the ALJ's decision entered in this case. "It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Accordingly, this claim of error is denied.

9

IV.     **CONCLUSION**

Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the Commissioner is directed to re-evaluate the opinions expressed in Dr. Seicarescu's sworn statement.  A judgment consistent with this opinion will be issued forthwith.


Dated:  March 8, 2022                              /s/ Ray Kent
                                                   United States Magistrate Judge